IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v. Criminal No. 3:00cr71

JEFFREY A. PLEASANT

## MEMORANDUM OPINION

This matter is before the Court on the defendant's MOTION TO REDUCE SENTENCE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 194); the RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 603(B) OF THE FIRST STEP ACT (ECF No. 197); and the DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 603(b) OF THE FIRST STEP (ECF No. 199). For the reasons set forth below, the motion will be granted in part.

## BACKGROUND

In 2001, Jeffrey A. Pleasant was convicted of two counts of interference with commerce by threats and violence in violation of 18 U.S.C. § 1951(f) (Counts One and Four), possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count Seven), and four counts of using, carrying and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Two, Three, Five and Six). The offenses of

conviction arose out of two armed robberies that were committed on January 24, 2000 when Pleasant was 35 years old.

The first robbery was of a jewelry store which the defendant entered wearing a mask and displaying a silver pistol. He forced the employees to take him to the safe from which Pleasant took items totaling more than $50,000.00 in value (ten watches, one clock, nine rings, two strands of pearls, two pair of earrings, four gemstones, two cuff links, one diamond pin, and three bracelets).

Not long thereafter on the same day, Pleasant entered a Rite Aid pharmacy, again brandishing the same pistol, and demanding that the employees give him the contents of the safe. On this occasion, Pleasant took $11,050.00.

At the time of those two robberies, Pleasant was under surveillance because he was a suspect in earlier robberies. After the Rite Aid robbery, the police officers attempted to stop Pleasant, but he eluded the police after which he abandoned his car. He was arrested later in the evening. The arresting officers recovered a .357 caliber handgun, some lottery tickets that Pleasant had stolen from Rite Aid, and some jewelry stolen from the jewelry store.

Pleasant's criminal career involving theft began at an early age so that by the time he was legally an adult he had amassed

seven juvenile convictions for breaking and entering and grand larceny and other crimes. He was, of course, assessed no criminal history points for those offenses.

Pleasant's adult convictions began when he was approximately 18 years old and they are mostly for statutory burglary and grand larceny. There are also convictions for a hit and run, credit card forgery, robbery, and use of a firearm in the commission of a felony. And, Pleasant was on release from a state conviction when he committed the offenses of conviction here.

For most of the offenses recited above, Pleasant received no criminal history points. Nonetheless, because of his extensive criminal history, he did receive 21 criminal history points and was determined to be a Criminal History Category VI. Further, because of the nature of the crimes comprising the criminal history category (many of which involved firearms), Pleasant was determined to be an Armed Career Criminal.

On May 24, 2000, Pleasant was sentenced to a term of imprisonment of 622 months, consisting of 240 months on Counts One and Four (concurrent) and 260 months on Count Seven (to run concurrently to the sentence on Counts One and Four), five years consecutive on merged Counts Two and Three, and 25 years consecutive thereto on merged Counts Five and Six. The sentences on merged Counts Two and Three and merged Counts Four and Five are

commonly referred to as "stacked sentences." Here, the stacked sentences amount to 30 years (five years on Counts Two and Three merged followed by 25 years on Counts Five and Six merged).

At the time of sentencing on the offenses of conviction in this case, Pleasant was serving a state court sentence, and, after sentencing in this case, he returned to state custody to complete service of the state sentence. He was released on parole after serving 18 years of the state sentence. He then began service of the sentence imposed in this case.

The sentencing regime in affect at the time that Pleasant was sentenced provided for the stacking of sentences for multiple convictions under 18 U.S.C § 924(c). In Section 403 of the First Step Act, Congress provided that, for offenses occurring after the passage of the Act, "the 25-year mandatory minimum is 'reserved for recidivist offenders and no longer applies to multiple section 924(c) convictions obtained in a single prosecution.'" United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020) (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). As the Fourth Circuit explained in McCoy, when passing the provision that limited the stacking requirement respecting convictions under 18 U.S.C. § 924(c), Congress declined to make that particular modification apply retroactively. United States v. McCoy, 981 F.3d at 275. At the same time, the Fourth Circuit, in McCoy, held

that, as a part of an individualized sentencing, a court could consider legislative changes in evaluating a motion for compassionate release in a particular case and as to a particular defendant. United States v. McCoy, 981 F.3d at 286.

Pleasant's motion for compassionate release is filed pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly referred to as Section 603(b) of the First Step Act. Under that statute, courts, in certain circumstances, may, upon motion of the defendant, reduce the term of imprisonment originally imposed after considering the factors specified in 18 U.S.C. § 3553(a) (or such as those factors as are applicable) upon a finding that "extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).[1]

Pleasant predicates his motion for compassionate release on the assertion that there are two extraordinary and compelling reasons to reduce his sentence. First, Pleasant argues that "his exemplary and self-motivated rehabilitation in the face of a life behind bars" is an extraordinary and compelling reason warranting compassionate release. Second, he argues that the stacked

[1] There is no issue in this case whether Pleasant has satisfied the thirty day exhaustion requirement that controls assessment of a motion made by the defendant rather than the Bureau of Prisons.

sentences for conviction under 18 U.S.C. § 924(c), which comprise 360 months of the 622 months sentence that Pleasant is serving, constitutes an extraordinary and compelling reason for compassionate release, considering that, if he was sentenced today, such stacking would be prohibited. In his reply brief, Pleasant advances another argument based on the Worksheet in Response to Motion for Compassionate Release (ECF No. 198). Therein, the Probation Officer notes that, if sentenced today, Pleasant would not qualify as an Armed Career Criminal because his conviction for burglary under Va. Code Ann. § 18.2-91 no longer qualifies as a predicate offense for an Armed Career Criminal enhancement. (ECF No. 198, p. 2, n.4). Pleasant suggests that is another reason to reduce his sentence. (ECF No. 188, p. 4).

## DISCUSSION

### A. Preliminary Matter: Objection of the United States

Before assessing Pleasant's contentions, it is necessary to address an objection by the United States. In particular, the United States objects to the Probation Officer's submission of the Worksheet in Response to Motion for Compassionate Release (ECF No. 198).

To begin, the Court notes that it has adopted a procedure to call upon the Probation Office to provide a worksheet for

compassionate release motions that, *inter alia*, provides information comparing the guidelines that obtained at the original sentencing with current guidelines. That procedure has been in effect for hundreds of compassionate release cases and the United States has not previously objected to it. However, on this occasion, the United States penned a lengthy objection (ECF No. 197, pp. 3, 4 and 5, n. 6).

In particular, the United States takes the position that it is not appropriate for the Probation Office to recalculate the guideline range when providing its recommendation on a motion for compassionate release. The predicate for that objection lies in the difference between motions for sentence reduction under Section 404 of the First Step Act and motions for compassionate release under Section 603.

The points made by the United States are in support of its position are three. First, as the United States correctly notes, each type of sentence reduction is authorized by different statutory provision. Compare 18 U.S.C. § 3582(c)(1)(b) with 18 U.S.C. § 3582(c)(1)(A). Second, the United States argues that the two statutes involve different substantive inquiries. Third, the United States notes that the Fourth Circuit has interpreted Section 404 of the First Step Act and the compassionate release statute to carry different procedural requirements. On the third point, the

United States correctly points out that the Fourth Circuit's jurisprudence requires accurate recalculation of the guideline sentencing range when considering a motion under Section 404, and that a motion for compassionate release does not carry the same requirement.

For those three reasons, the Fourth Circuit has recognized that Section 404 and the compassionate release statute are significantly different regimes. Therefore, says the United States, there is no basis in the text of the statute or in the Fourth Circuit's caselaw construing § 3582(c)(1)(A) for the Probation Office to recalculate the guideline range when providing its recommendation on a motion for compassionate release.

Much of what the United States says is correct. But, the three arguments are of no moment because none of the three arguments (even accepted as accurate) precludes the Court from being informed of the proper guideline range when considering a motion for compassionate release and when modifying a sentence based on that motion.

Moreover, the objection runs counter to the clear message sent by the decision of the Supreme Court of the United States in Concepcion v. United States, 142 S. Ct. 2389 (2022). There, the Supreme Court broadly discussed the discretion of district courts in deciding whether to grant motions for sentence reduction under

Section 404(b) of the First Step Act. In so doing, the Supreme Court held that, in adjudicating such a motion, district courts "may consider other [than penalty revisions for crack cocaine] intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison)." Id. at 2396. The rationale given for that view respecting motions under § 404(b) applies equally to motions under § 603. And, in any event, in United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020), the Fourth Circuit held that consideration of § 603 motions properly could involve such changes (in law, guidelines, and facts) as part of an individualized sentencing decision.

That individualized sentencing process is best accomplished with the aid of up-to-date and accurate information from the Probation Office. For that reason, the objection of the United States will be overruled.[2]

This case illustrates the wisdom of having the advices of the Probation Office for several reasons. First, the Worksheet points out an error in the original Presentence Report when it applied a

---

[2] The objection is also in conflict with the fundamental teachings of both McCoy and Concepcion respecting how to conduct individualized sentencing. The dissent in Concepcion presents a legitimate view on that topic which tends to support the objection filed here by the United States, but district courts must follow the instructions of the majority opinion for it is the decision of the Supreme Court.

five-level firearm enhancement. Second, Pleasant would not be an Armed Career Criminal if sentenced today. Third, the three point violence enhancement would not apply. Fourth, the one point enhancement for committing the offense of conviction less than two years after release would not apply. The result would be an Offense Level of 24 (not 34) and a criminal History Category of VI. The resulting guidelines would be:

- Counts 1 and 4 — 100-125 months
- Count 7 — 100-120 months
- (Combined) — 100-125 months)
- Counts 2 and 3 merged — 60 months, consecutive
- Counts 5 and 6 merged — 60 months, consecutive

Total: 200-245 months

That is, indeed, materially different than the 262-327 months plus 360 consecutive months calculated in the original Presentence Report and used as the basis for Pleasant's sentence. Thus, because of the advices of the Probation Office, this Court is better able to follow the general instruction on sentencing given by the Supreme Court in Concepcion.

**B. The Stacking Argument**

As to the stacking argument made by Pleasant, it should be noted that the First Step Act did not actually eliminate stacking. Rather, it made stacking applicable only after a previous

conviction under 18 U.S.C. § 924(c) had become final. Thus, as explained in United States v. Jordan, 952 F.3d at 171, the stacking enhancements under § 924(c) are "reserved for recidivist defendants, and no longer appl[y] to multiple § 924(c) convictions obtained in a single prosecution." And, as explained in United States v. Williams, No. 1:92cr83, EDVA Jan. 5, 2021 (ECF No. 349), "the legal backdrop against which [the defendant's] punishment was imposed has now shifted and binding authority grants this Court the opportunity to reassess its circumstances in search of a more compassionate end." And, as noted previously, even the United States recognizes that, on a case-by-case basis, the Court can consider the stacking question in resolving a compassionate release motion so long as that consideration is on a case-by-case basis. The fact of the matter is that the stacking provisions added very substantial time to Pleasant's sentence and that is the predicate, in part, for Pleasant's argument that his sentence is unnecessarily harsh which, in turn, constitutes an extraordinary and compelling circumstance for relief under Section 603.

The second aspect of Pleasant's motion is that he has demonstrated exemplary rehabilitation while in prison (ECF No. 194, pp. 8-9). The linchpin of that argument is that, on July 30, 2018, Pleasant was released from the Virginia Department of Corrections on discretionary parole that Virginia's parole

decision took into account an assessment of the risk to public safety, the inmate's history, conduct, education, training, and institutional experiences viewed in perspective of the offense, all of which establish that a responsible entity has determined that Pleasant has been rehabilitated and that those factors also are appropriately to be considered in assessing whether Pleasant is entitled to compassionate release from his federal sentence which began on July 30, 2018, eighteen years after the federal sentence was imposed. (ECF No. 194, p. 3).

While Pleasant did demonstrate exemplary rehabilitation efforts while in state custody, he has taken two classes while in federal custody, both completed in September 2018, and his record demonstrates nothing exemplary by way of rehabilitation while serving the federal sentence. That record also shows that Pleasant sustained no disciplinary violations while in custody.

**C. Assessment**

The change in the stacking of penalties warrants an adjustment of Pleasant's sentence. And, Pleasant's effort at rehabilitation must be considered even though those efforts did not occur in federal prison. That is because the Supreme Court has instructed that "[w]hen a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." Concepcion v. United

States, 142 S. Ct. at 2396 (citing Pepper v. United States, 562 U.S. 476, 492 (2011). And Concepcion instructs, as well that, in an individual case, this precept from Pepper applies when deciding a motion to reduce sentence brought under § 404(b) of the First Step Act.

In perspective of the instruction from Concepcion on that point, and considering the holding of McCoy, there is no reason to believe that rehabilitation efforts in a state prison cannot be considered in assessing Pleasant on the date of the sentencing modification to be determined on a motion brought under Section 603.

The United States seems to recognize as much and urges that, as permitted by both Concepcion and McCoy, the decline to exercise the discretion entrusted to it under those decisions as respects the particular rehabilitation argument made by Pleasant. In making that argument, the United States distinguishes Pleasant's circumstances from those present in McCoy. The United States first says that, in McCoy, the defendants were relatively young at the time of their offenses of conviction and had served a substantial portion of their sentences. In contrast, Pleasant was an adult of 35 when he committed the armed robberies at issue and, unlike the defendants in McCoy as well, Pleasant has served only about four years of the federal sentence.

Also, the defendants in McCoy did not have a lengthy criminal history whereas Pleasant had an extensive criminal history at the time of his offenses. On that subject, the United States discusses at some length the detailed nature of Pleasant's juvenile convictions as well as his adult convictions emphasizing that in both categories the defendant's preferred criminal activity involved burglary and grand larceny. And, indeed, an examination of the Presentence Report shows that to be the case. In addition, Pleasant has convictions for hit and run and credit card forgery as well as a previous conviction for robbery and the use of a firearm.

The argument of the United States about Pleasant's history actually goes to the history and characteristics of the defendant. It is true that Pleasant is not like the defendants in McCoy, but that just is an argument that the defendant-related component of the first factor under 18 U.S.C. § 3553(a) does not weigh in favor of granting the motion.

The United States then turns its attention to the offense-related component of the first factor under the sentencing statute: the nature and consequences of the offenses of conviction. The United States correctly recites that the robberies committed by Pleasant were not only serious because they were robberies, but they were serious because of the way he conducted himself during

the robberies and the impact that his conduct on the victims. Further, granting the motion would not, in the view of the United States, properly take into account the need to protect the public. That, says the United States, is because of the defendant's lengthy criminal history. As the United States puts it, "the defendant spent much of his life before his incarceration in this case engaged in violent criminal conduct." (ECF No. 197, p. 14).

The history and characteristics of the defendant, as noted above, also include the fact that the state authorities granted Pleasant parole and in so doing recognized his efforts at rehabilitation. The United States addresses Pleasant's assurance that "he is a changed man who has 'demonstrated exemplary rehabilitation'"[3] by asserting that the argument "rings hollow." (ECF No. 197, p. 15). To support that view, the United States recites several instances when the defendant has been convicted and incarcerated and released from prison only to revert to his old ways. (ECF No. 197, pp. 15-16). That point must be given some weight because an important part of Pleasant's motion for compassionate release is that he is rehabilitated. However, his history suggests that he has been accorded leniency before but then reverted to crime shortly thereafter. Further, the simple

[3] (ECF No. 194, p. 8).

fact is that Pleasant has served only a very small fraction of his federal sentence and that is a factor that is to be taken into account in assessing protection of the public and the needs for deterrence, general and specific.

The analysis now is at the point that it is necessary to assess what must be done in view of the change in law respecting stacking and the fact that there is some evidence that must be credited on the topic of rehabilitation. As noted previously, the original guideline calculations for Counts One, Four and Seven called for 262 to 327 months and the sentence on merged Counts Two and Three and merged Counts Five and Six (the stacked sentences) added 360 months to be served consecutively to the sentence imposed for Counts One, Four and Seven. That meant that the total guideline range was 662 months to 687 months. The defendant was sentenced to 622 months.

The guideline calculations today which are necessary to conform the stacked sentence to current law and to correct an error in the original Presentence Report and to make adjustments for changes in guidelines call for a range of 100 to 125 months on Counts One and Four and 100 to 120 months on Count Seven, all of which are combined so that the combined guideline sentence for Counts One, Four and Seven is 100 to 125 months to which must be added the consecutive sentence of 60 months on merged Counts Two

and Three and the consecutive sentence of 60 months on merged Counts Five and Six, producing a total guideline range of 220 to 245 months-which is the product of applying the corrective action to determine the offense level which is reduced from 34 to 24 and the Criminal History Category of VI.

Taking into account the instructions of Pepper, Concepcion and McCoy, it is appropriate to grant Pleasant's motion and to reduce his total sentence to a term of 245 months consisting of 125 months on Counts One and Four and 120 months on Count Seven, all to run concurrently; and a sentence of 60 months on merged Counts Two and Three to run consecutively to the sentence imposed on Counts One, Four and Seven; and a sentence of 60 additional months on merged Counts Five and Six, to be served consecutively to the sentences imposed on Counts One, Four, Seven, and merged Two and Three.

It should be remembered that no adjustment is considered appropriate if the defendant presents a danger to society. Pleasant argues that he does not present a danger because he is rehabilitated. That argument has been addressed above in a somewhat different context. In considering the dangerousness component argued by the United States, the Court finds that Pleasant, although rehabilitated to a significant extent, nonetheless poses a danger to society (as shown by his previous

criminal history) and that continued lengthy confinement is required to recognize that reality. The foregoing adjustment to Pleasant's sentence provides a sentence that protects the public, provides a deterrent, and is sufficient but not greater than necessary to accomplish the objectives of the sentencing statute and the guidelines.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 6, 2023